UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DARRYL DUNCAN,
    Plaintiff,

vs.                                                    07-4028

GUY PIERCE, et. al.,
    Defendants.

**CASE MANAGEMENT /SUMMARY JUDGEMENT ORDER**

This cause is before the court for consideration of Defendant Rankin's motion for summary judgement [d/e 67] and Defendants Newton, Collins, Davis, McNeil, Pitts, Oleson, Ricke, G. Johnson, S. Johnson, Pierce, Vanwolvelare, Ballard and Frainey's motion for sanctions. [d/e 65].

I. BACKGROUND

The plaintiff, Darryl Duncan, originally filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated in the East Moline Correctional Center. The plaintiff has the following surviving claims against 14 defendants**:**

    a) Defendants Dr. Rankin and Scott Johnson were deliberately indifferent to the plaintiff's serious medical condition when they refused to reassign the plaintiff to different job on June 5 and June 13 of 2006.

    b) Defendants Collins, Davis, Newton, Ricke, Guy Johnson and Vanwolvelare were deliberate indifference to the plaintiff's serious medical condition on March 12, 2007 in violation of the Eighth Amendment.

    c) Defendants Oleson and Pitts violated the plaintiff's Eighth Amendment rights when they placed him in a cell without running water or toilet facilities in March of 2007.

    d) Defendants Dr. Frainey, Dr. Rankin, McNeil, Pierce and Ballard retaliated against the plaintiff for his grievances in violation of the First Amendment. The plaintiff alleges that Defendants Dr. Frainey and Dr. Rankin provided false information so the plaintiff would be placed in medical segregation. Defendants McNeil, Pierce and Ballard denied the plaintiff admission in a work release program.

On October 15, 2007, the plaintiff filed a notice of appeal. [d/e 41]. The plaintiff disagreed with the outcome of the merit review order and disagreed with the denial of his motion for appointment of counsel. The plaintiff did not initially file a motion to proceed *in forma pauperis* on appeal. However, when the plaintiff did file this motion, it was denied on February 15, 2008. The

plaintiff was advised he must pay the appellate filing fee within 14 days. *See* February 15, 2008 Court Order.

On April 4, 2008, Defendant Rankin filed a motion for sanctions against the plaintiff. The defendant stated that a deposition of the plaintiff was scheduled for March 19, 2008 at the Vienna Correctional Center. The plaintiff received proper notice of the time and place of his deposition. Defense counsel stated that the plaintiff refused to give his deposition and refused to give a statement on the record as to his reasons for refusing the deposition. The defendants asked that the plaintiff's case be dismissed or in the alternative, that the plaintiff be assessed reporter fees and mileage costs.

On April 23, 2008, the court denied the defendant's motion. However, the court clearly admonished the plaintiff:

> The plaintiff chose to file this lawsuit and therefore must participate in the discovery process. Because the plaintiff is proceeding *pro se,* the court will allow the plaintiff one more opportunity. The defendants are to reschedule the plaintiff's deposition and provide the proper notice to the plaintiff. The plaintiff must cooperate and participate in the deposition. If the plaintiff refuses to cooperate in the deposition, his case will be dismissed. April 23, 2008 Court Order.

The court then on its own motion extended the discovery deadlines.

On May 28, 2008, the United States Appellate Court for the Seventh Circuit also told the plaintiff he must pay the appellate filing fee within 14 days or his appeal would be dismissed. [d/e 63] His appeal was dismissed on July 18, 2008 [d/e 73].

## II. MOTION FOR SUMMARY JUDGEMENT

Defense counsel for Dr. Rankin has filed a motion for summary judgement or in the alternative motion for dismissal based on the plaintiff's failure to participate in his deposition. The motion was filed on June 27, 2008, but the plaintiff has failed to file a response and has failed to ask for additional time to file a response. The plaintiff claims Dr. Rankin was deliberately indifferent to the plaintiff's serious medical condition when he refused to reassign the plaintiff to a new job in June of 2006. In addition, the plaintiff claims Dr. Rankin retaliated against the plaintiff for his grievances in violation of the First Amendment. Specifically, the plaintiff alleges that Dr. Rankin provided false information so the plaintiff would be placed in medical segregation.

A. FACTS

The undisputed facts stated by the defendant are as follows: Dr. Rankin is the Medical Director at East Moline Correctional Center and saw the plaintiff as a patient when he was housed at the facility. (Def. SJ Mot, Ex. A, p. 1). The defendant says he saw the plaintiff on June 15, 2006

for a scheduled follow-up visit due to a cyst on his toe. However, the plaintiff's chief complaint was pain in his left arm after fell on it the previous day. The doctor says he examined the plaintiff and found that he had full range of motion in his wrist, but was complaining of pain. The doctor ordered a splint, ibuprofen for pain, an X-ray and provided him a permit to be off work for six days. (Def. SJ Mot, Ex. A, p. 2). The plaintiff was also to return for a follow up examination in six days.

On June 23, 2006, Dr. Rankin again saw the plaintiff. The x-rays were negative and the doctor observed no tenderness in the plaintiff's wrist. The plaintiff was also able to make a fist. The doctor says he discontinued the splint and advised the plaintiff to return to the health care unit as needed. (Def. SJ Mot, Ex. A, p. 3). Dr. Rankin says:

> [b]ased upon my observations and evaluation of Mr. Duncan regarding his complaints and toe complaints, I provided Mr. Duncan a permit to remain free from work for approximately six days. After that, there was no medical reason which would prohibit Mr. Duncan from being able to return to his job in my opinion. (Def. SJ Mot, Ex. A, p. 3).

Dr. Rankin says he has no role in work assignment for inmates and says he is not aware of what jobs the plaintiff may have had at the East Moline Correctional Center or any other correctional facility. (Def. SJ Mot, Ex. A, p. 3).

Dr. Rankin again says he next saw the plaintiff on June 29, 2006 to check on his toe and complaints of left arm pain. The doctor states the plaintiff looked well and had no tenderness. The plaintiff also had full range of motion in his arm. The doctor still provided him pain medication.

On July 18, 2006, the plaintiff returned to the health care unit. The plaintiff was complaining of elbow pain. Dr. Rankin says he evaluated the plaintiff and noted that he walked well. His elbow had a full range of motion, but some tenderness. The doctor provided him treatment for his complaints and a band aid for his toe. "I did not consider Mr. Duncan's condition to be a serious medical need. The blisters on his toes appeared to be the result of a possible ganglion cyst, which is not a serious medical need." "These types of cysts are difficult to manage as their causes can vary and treatment provides no guarantee of relief. In general, such cysts are not painful in and of themselves without aggravation." (Def. SJ Mot, Ex. A, p. 4, 5).

Dr. Rankin saw the plaintiff next on August 30, 2006. The plaintiff complained of problems with his left arm, but made no reference concerning any prison job. (Def. SJ Mot, Ex. A, p. 5). The doctor treated the plaintiff with ibuprofen and an injection of a steroid.

The plaintiff next saw Dr. Rankin on November 8, 2006. The plaintiff complained of left elbow pain. The doctor provided him "with ibuprofen, as well as A-balm (analgesic balm) and antacids to treat the side effects of the pain medication." (Def. SJ Mot, Ex. A, p. 6). Dr. Rankin also states "there was no objective finding with respect to Mr. Duncan's elbow, all we could do at that time was treat Mr. Duncan's complaints of pain." (Def. SJ Mot, Ex. A, p. 6)

On March 12, 2007, Dr. Rankin says he saw the plaintiff after he was placed in segregation. Dr. Rankin says he had no involvement in the decision to place the plaintiff in segregation. The doctor says shortly after the plaintiff was taken to segregation he complained of pain in his chest, shoulder and back. The doctor ordered medication for his complaints and ordered him to be put on 24-hour observation.

Dr. Rankin saw the plaintiff the next day for further evaluation. He complained of left arm pain and neck pain, but was alert and oriented and able to converse with the doctor. The doctor conducted an examination and noted that the plaintiff may have a possible cervical disc problem. Medications were prescribed.

Dr. Rankin evaluated the plaintiff again on March 16, 2007 and March 20, 2007. On March 20, 2006, the plaintiff says when he woke up his jaw was locked. He also complained of pain in his chest and back. He was not in distress when talking to the doctor. Dr. Rankin ordered medication and placed the plaintiff in the infirmary for observation. "It was my recommendation that Mr. Duncan be admitted to the infirmary so that he could be monitored for his complaints and abilities." (Def. SJ Mot, Ex. A, p. 7).

Dr. Rankin says he made several notations concerning the plaintiff's progress while in the infirmary. "Overall, my notes suggested that Mr. Duncan had continued complaints of pain, but no longer needed to be in the infirmary following March 23, 2007." (Def.SJ Mot, Ex. A, p. 8). The plaintiff left East Moline Correctional Center in April of 2007.

Defense counsel also notes that after receiving proper notice of his second deposition, the plaintiff refused to be placed under oath or answer any questions.

B. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine"

issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

C.  ANALYSIS

Defendant Rankin argues there is no evidence of deliberate indifference to a serious medical condition. The plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id.* The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.*  On the other hand, "to say that the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v Detella,* 95 F. 3d 586, 592 (7th Cir. 1996).

The second prong of the Eighth Amendment test requires the plaintiff to show that the defendants acted with deliberate indifference.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The plaintiff alleged that Dr. Rankin was deliberately indifferent to the plaintiff's serious medical condition when he refused to reassign the plaintiff to a new job in June of 2006. Dr. Rankin first contends that the plaintiff did not suffer from a serious medical condition at this time. However, irregardless of whether the plaintiff's condition did rise to this standard, the only evidence before the court is the doctor did provide treatment to the plaintiff, did order X-rays and did give him a week off of work. After seeing the plaintiff a second time, the doctor saw no medical reason the plaintiff should not return to week. A difference of opinion with the doctor is

not the proper basis for a §1983 lawsuit. In addition, there is no evidence this defendant had any say over the assignment of any prison job. The motion for summary judgment on this claim is granted.

Dr. Rankin also argues there is no evidence that he retaliated against the plaintiff. To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law. It would be illogical and destructive of the disciplinary system of a penal institution to say that an act by a corrections officer that is supported by legitimate penological purposes can support a claim of retaliation for exercise of a constitutional right.

The plaintiff alleged that Dr. Rankin retaliated against the plaintiff for his prior grievances. The plaintiff claims Dr. Rankin provided false information so the plaintiff would be placed in medical segregation. First, there is no evidence of prior grievances or that Dr. Rankin was aware of prior grievances. Second, there is no evidence the doctor had any input in the decision to place the plaintiff in segregation. Finally, the doctor did order the plaintiff to be put under 24 hour medical supervision due to his complaints of chest pain. The doctors decision is supported by legitimate penological concerns. The motion for summary judgement on the retaliation claim is also granted. The claims against Dr. Rankin are dismissed.

The court notes Defendant Rankin also argued that the plaintiff's case should be dismissed due to his failure to cooperate in his second deposition.

### III. MOTION FOR SANCTIONS.

Defendants Newton, Collins, Davis, McNeil, Pitts, Oleson, Ricke, G. Johnson, S. Johnson, Pierce, Vanwolvelare, Ballard and Frainey have filed a motion for sanctions. [d/e 65] The defendants state they arranged for the second deposition on May 21, 2008 and a notice was sent to the plaintiff on May 5, 2008. Defense counsel again traveled to the Vienna Correctional Center for the deposition. Counsel for the Illinois Department of Corrections (herein IDOC) employees is based in Springfield, Illinois and therefore traveled 215 miles, one-way. The plaintiff again refused to participate in the deposition. The defendants have provided a copy of the court reporter's transcript.

During the encounter, the plaintiff says he was "mentally and physically out of it" although he does not provide specific information beyond stating that he was experiencing foot pain and had taken several Motrin. When defense counsel informed the plaintiff that they were there to question him concerning this case, the plaintiff stated that the district court had made a mistake in denying

his motion for appointment of counsel, that he had filed an appeal and he was asking for a new merit review hearing. (Def. Mot, Ex. A, p. 7)   The plaintiff stated that the matter was before the Appellate Court and he would not be answering any questions.   The plaintiff was given another copy of the court order informing him that he must cooperate with discovery, including his deposition, or his case would be dismissed.   The plaintiff acknowledged that he had received the order, but refused to be placed under oath and refused to participate in the deposition.

Defense counsel for the IDOC employees says the plaintiff's lawsuit involves his medical needs, conditions of confinement and retaliation and all of these issues would have been the subject of his deposition.  Defense counsel for the IDOC employees further states counsel traveled a total of over 430 miles for a second time to conduct the deposition.  In addition, defense counsel had to pay court reporter fees.  Defense counsel estimates his costs at $271.15. (Def. Mot, p. 3).  The plaintiff was notified of the deposition, but did not provided any advance notice that he again was refusing to participate in the deposition.  The plaintiff has not provided any response to the defendants' motion for sanctions filed more than three months ago.

Defense counsel is asking that the plaintiff's complaint be dismissed, or that the plaintiff be barred from testifying to the issues in his complaint.   Defense counsel for the IDOC employees is also asking that the matter be stayed pending ruling on this motion.

The defendants have made their motion pursuant to Federal Rule of Civil Procedure 37(d). Under this section, the court may impose sanctions when a party fails to appear for his deposition after receiving proper notice.  However, courts have strictly construed the phrase 'failure to appear' to require a showing that the deponent actually failed to physically appear at the scheduled deposition. *See Stevens v Greyhound Lines, Inc.,* 710 F.2d 1224, 1228 (7th Cir. 1983), *see also Arizona v. Wright,* 34 F.3d 587, 589 (8th Cir. 1994) (refusal to answer questions or participate in deposition did not constitute "failure to appear.") Although the plaintiff was incarcerated at the time and had little choice, he did clearly appear for his deposition.

Nonetheless, the plaintiff did refuse to follow a court order when he refused to participate in the deposition.  Federal Rule of Civil Procedure 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the court may impose sanctions including dismissing the action. Fed.R.Civ.P 37(b).

> District courts have discretion in deciding when to dismiss an action for failure to comply with discovery orders.  Dismissal is appropriate when a plaintiff fails to comply with a discovery order and that failure results from willfulness, bad faith or fault. Bad faith is characterized by intentional or reckless disregard of an obligation to comply with a court order.  Fault refers to the reasonableness of the conduct that lead to the violation and not the non-complying party's purpose." *Sparrgrove v Wachter,* 2004 WL 1795238 at 4 (W.D. Wis. Aug. 4, 2004).

In reviewing the procedural history of this case, the plaintiff first filed his appeal on October 15, 2007. No final denial of his appeal had been entered when the plaintiff refused to participate in his first deposition on March 19, 2008. The court entered an order on April 23, 2008 clearly stating that the plaintiff must still participate in the discovery process and must participate in his deposition. The plaintiff was told if he refused to cooperate in the deposition, his case would be dismissed. April 23, 2008 Text Order.

The defendants rescheduled the deposition for May 21, 2008 and again properly notified the plaintiff of the time and place. The plaintiff did not respond or object. When the defendants arrived, the plaintiff again refused to participate. The plaintiff said he disagreed with the court's earlier merit review and denial of his motion for appointment of counsel. The plaintiff said the matter was before the appellate court.

The plaintiff chose not to respond to the motion for sanctions and clarify his position. The plaintiff is proceeding pro se. An argument could perhaps be made that the plaintiff was confused about the status of his case and which court had jurisdiction. However, the district court still retained jurisdiction over this case since the plaintiff had filed an appeal from an unappealable order. *See United States v. Bastanipour,* 697 F.2d 170 (7th Cir. 1982). The claims dismissed in the merit review order were not dismissed with prejudice, and the plaintiff always had the option to file a motion to amend his complaint. *See Taylor-Holmes v. Office of Cook County Public Guardian,* 503 F.3D 607 (7th Cir. 2007); *see also Schatz v McCauhtry,* 1996 WL 326015 (7th Cir. June 11, 1996).

Furthermore, if the plaintiff had any doubts, his appeal was still pending when this court informed the plaintiff that he must cooperate with discovery or his case would be dismissed. The district court also advised the plaintiff on February 15, 2008 that he had to pay the appellate filing fee or his appeal would be dismissed. He clearly did not pay the fee prior to the deposition. Finally, the defendants reminded the plaintiff of the court order to cooperate with the deposition. The plaintiff acknowledged that he had received the order.

The court acknowledges that given the fact that the plaintiff is proceeding pro se, the defendants will be greatly disadvantaged without an opportunity to depose the plaintiff and clarify the claims against them. Most of the IDOC defendants will not have medical records to rely on such as Dr. Rankin. In addition, the court cannot simply bar the plaintiff from testifying as to the matters that would have been covered in the deposition. The impact would be the same as dismissing the case.

While the plaintiff has continued to file motions with this court, he has not filed a response to the motion for sanctions. The court does believe the plaintiff's failure to participate in the deposition was willful and in bad faith. While the plaintiff had filed an appeal concerning his merit review and motion for appointment of counsel, he had filed this impermissible interlocutory appeal prior to the first deposition. The court had already given the plaintiff the benefit of the doubt after his refusal to participate in the first deposition and clearly ordered the plaintiff to participate in the

second deposition.  The plaintiff acknowledged receipt of that order, but still refused to answer questions.   Sanctions are appropriate.  Nonetheless, because this plaintiff is proceeding pro se, the court will not dismiss the plaintiff's case at this time.  Instead, the court will order the plaintiff to reimburse the defendants the cost of the second deposition.  The plaintiff must pay $271. 15 to the clerk of the court within twenty-one days.   If the plaintiff fails to pay this fee within twenty-one days, his case will be dismissed in its entirety.   The court cannot allow the plaintiff to continue to ignore court orders and fail to participate in the discovery process.

**IT IS THEREFORE ORDERED that:**

**1) Defendant Rankin's motion for summary judgement is granted pursuant to  Fed. R. Civ. P. 56. [d/e 67]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.**

**2) Defendants Newton, Collins, Davis, McNeil, Pitts, Oleson, Ricke, G. Johnson, S. Johnson, Pierce, Vanwolvelare, Ballard and Frainey's motion for sanctions is granted. [d/e 65] The plaintiff must pay $271. 15 to the clerk of the court within 21 days. IF THE PLAINTIFF FAILS TO MAKE THE FULL PAYMENT WITHIN 21 DAYS OF THIS ORDER, HIS CASE WILL BE DISMISSED.  NO EXTENSIONS WILL BE ALLOWED.**

**3) The case is stayed pending the plaintiff's payment.  Once the payment is made, a deposition will be scheduled and the case will proceed.**

ENTERED this 24th day of October, 2008.


                               s\Harold A. Baker
                          _____
                                HAROLD A. BAKER
                         UNITED STATES DISTRICT JUDGE